# UNITED STATES BANKRUPTCY COURT FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

IN RE: **CHELSEA C. GOODY**
　　Debtor

**CHAPTER 13**

**THE ANXIETY TREATMENT CENTER OF MD, INC**
Creditor

**CASE NO. 1-24-bk-00600**

## CREDITOR RESPONSE TO DEBTOR OBJECTION TO PROOF OF CLAIM

Creditor, The Anxiety Treatment Center of MD, Inc (DBA The Maryland Anxiety Center) **opposes** Debtor, Chelsea C. Goody's **Objection to Creditor Proof of Claim** for the following reasons:

1) Debtor claims that Creditors Breach of Employment Contract claims against her are false. Creditor, attached written documentation in support of Creditor's Proof of Claim which has already been filed with this Court.
2) During Discovery, Debtor admitted under Oath: 1) that she knowingly breached her Employment Contract prior to Contract Term, 2) opened a private practice specifically in breach of the Employment Contract several months prior to her early termination, and 3) directly solicited a significant amount of patients from Creditor/Employer for her own financial gain.
3) In addition, Creditor has financial documentation also produced by Debtor showing that she made a significant amount of income in 2022 and believes she is fraudulently filing this Bankruptcy Claim to evade financial liability for her blatant breach of the Employment Agreement which caused significant financial loss and financial harm to Creditor/Plaintiff.
4) Again, Creditor previously filed: 1) Employment Agreement, 2) Creditor's early Termination Letter, 3) Amended Complaint and 4) Calculation of Damages.
5) Creditor has further written documentation, including Debtor/Defendant's Deposition Transcript which includes admissions under Oath, documentation produced by Debtor/Defendant during

Discovery showing the names of patients Debtor/Defendant solicited from Creditor/Plaintiff, the amounts of income she produced from those patients and all dates. Creditor also has written proof and documentation that Debtor/Defendant falsified patient health records to conceal and cover such breaches.

6) Further documentation may be provided upon request or at any hearing or trial on the matter subject to the limitations of the Maryland Circuit Court's Confidentiality Order dated August 16, 2023.

Creditor requests that Debtor's Objection to Creditor Proof of Claim be denied.

June 19, 2024
Date

*Andrea J. Batton, LCPC*
The Anxiety Treatment Center of MD, Inc
DBA: The Maryland Anxiety Center
Andrea G. Batton, LCPC

# Calculation of Damages

The Anxiety Center of Maryland, Inc. dba The Maryland Anxiety Center (the "Center") claims damages of (1) sixty percent (60 %) of the monies paid to Ms. Goody for the services rendered by Ms. Goody or on her behalf or through Goody Counseling Services, LLC outside of the Center's practice during the term of the Employment Agreement and (2) for the average of twenty-five (25) hours per week from July 1, 2022 to October 6, 2023, the balance of her Employment Agreement term. Based on the documentation provided by Ms. Goody, she had income in violation of her contract in the amount of $41,775 for item (1). The Center's sixty percent (60 %) share equals $25,065.

For item (2), the period from July 1, 2022 to October 5, 2023, Ms. Goody would have produced fees of $325,650 based on the 25 hours per week she had been providing during her full-time status. The Center's share equals $195,390, for a total claim of $220,455.

IN THE CIRCUIT COURT FOR BALTIMORE COUNTY

THE ANXIETY CENTER OF MARYLAND, INC. *

DBA THE MARYLAND ANXIETY CENTER *

    Plaintiff * CASE NO. C-03-CV-23-002061

VS. *

CHELSEA GOODY, LCPC, ET AL *

    Defendants *

**********************************************************************

## SECOND AMENDED COMPLAINT

The Plaintiff, The Anxiety Center of Maryland, Inc., by its attorneys, Richard Bloch and Shiling, Bloch & Hirsch, P.A., files this Second Amended Complaint against the Defendants, Chelsea Goody, LCPC, individually and trading as Goody Counseling Services, and Goody Counseling Services, LLC, and for reasons says:

## COUNT ONE -Breach of Contract

1. The Plaintiff engages in the practice of mental health treatment through its employees.

2. On October 6, 2020, Plaintiff entered into an Employment Agreement (the "Agreement") with the Defendant, Chelsea Goody, LCPC. The initial term was for three (3) years, effective October 6, 2020. The Agreement is attached hereto as <u>Exhibit A</u>.

3. Defendant Goody subsequently accepted a teaching position at Loyola University Maryland in early 2022, without the written authorization of the Plaintiff, which position interfered with the Defendant's obligations to the Plaintiff and reduced her availability to clients of the Plaintiff, in violation of the Agreement.

4. Defendant Goody then began indicating "block" in the office calendar and advising the Plaintiff that she was "unavailable" to provide services for the Plaintiff during those times, thereby reducing her availability to patients, for consultation and other services of the practice, in violation of the Agreement.

5. While employed by the Plaintiff, Defendant Goody opened a competing practice, Goody Counseling Services, in Pennsylvania on January 28, 2022, and solicited and treated patients of the Plaintiff, in violation of the Agreement.

6. While employed by the Plaintiff, Defendant Goody opened another competing practice, Goody Counseling Services, LLC, in Maryland, March 6, 2022, and solicited and treated patients of the Plaintiff, in violation of the Agreement.

7. Defendant Goody then resigned effective July 1, 2022, pursuant to the Defendant Goody's resignation letter dated May 2, 2022, in violation of the Agreement. The letter is attached hereto as Exhibit B.

8. The Defendant Goody violated the Agreement by soliciting and interfering with the Plaintiff's relationship with its patients, employees, prospective employees and referral sources.

9. Following the termination of Defendant Goody's employment with the Plaintiff, the Defendants continued to solicit and provide services to patients of the Plaintiff in violation of the Agreement.

10. The Defendant Goody violated the provisions of the Agreement, including, but not limited to, (i) rendering services other than through the Plaintiff without the approval of the Plaintiff, (ii) collecting fees for services rendered and not paying them to the Plaintiff, (iii) establishing an independent practice without the knowledge or approval of the Plaintiff, (iv) retaining and/or copying patient records, (v) providing the services of another employee of the

Plaintiff to clients of the Plaintiff, outside of the Plaintiff's practice and without approval of the Plaintiff, and (vi) violation of the post-employment covenants of the Agreement.

11. Defendant Goody breached the Agreement and caused the Plaintiff damages, including, but not limited to, loss of income and profits, loss of patients, and other expenses and losses.

WHEREFORE, Plaintiff demands judgment against the Defendant Goody in an amount greater than $75,000, plus interest and costs, and such other and further relief as may be just.

## COUNT TWO- Breach of Covenants

12. Plaintiff adopts by reference the allegations set forth in paragraphs 1-11 above.

13. Sections 10, 11, and 12 of the Agreement provide obligations of and restrictions on the Defendant Goody, and the rights of the Plaintiff pertaining to the Defendant Goody's solicitation of patients, breach of confidentiality and remedies available to the Plaintiff following Defendant Goody's termination of employment.

14. Defendant Goody has violated her obligations and agreements and has solicited patients of the Plaintiff and has otherwise violated her obligations to the Plaintiff.

15. Defendant Goody's actions have been in her individual capacity and as the owner and agent of Goody Counseling Services, LLC.

16. Defendant Goody's actions have caused the Plaintiff to incur losses and damages.

WHEREFORE, Plaintiff demands judgment against the Defendant Goody in an amount greater than $75,000.00, plus interest and costs; and that this Court issue *Ex Parte*, Interlocutory and Permanent Injunctions requiring the Defendant Goody to cease and desist violation of the covenants set forth in the Agreement, from use of Plaintiff's confidential, proprietary, trade secret, client information, and such other and further relief as is just.

## COUNT THREE-Misappropriation of Trade Secrets, Confidential Information

17. Plaintiff adopts by reference the allegations set forth in paragraphs 1-16 above.

18. Plaintiff's client files are valuable, confidential, proprietary property and trade secrets that derive independent economic value from not being generally known to the public or to other persons who could obtain economic value from their disclosure or use.

19. Plaintiff has adopted and maintained appropriate measures to maintain the confidentiality and secrecy of Plaintiff's trade secrets and client information, including, but not limited to, having the Confidentiality Obligations set forth in Section 10 of the Agreement.

20. Defendant Goody had access to and worked with Plaintiff's clients and client files.

21. Plaintiff is informed and believes that Defendant Goody shared such confidential information with Goody Counseling Services, LLC, as owner and a provider of services.

22. Defendant Goody knew that sharing of such confidential information with Defendant Goody Counseling Services, LLC was in violation of the Agreement and an unauthorized use of Plaintiff's confidential, proprietary, trade secret information.

23. Defendant Goody Counseling Services, LLC, knew or should have known that its acceptance and use of such information was in violation of Defendant Goody's Agreement and that such information was Plaintiff's protected, confidential, proprietary information.

24. As a result of Defendant Goody Counseling Services, LLC's misappropriation and use of the Plaintiff's confidential, proprietary, trade secret information, Plaintiff has suffered and continues to suffer damages and losses.

25. Plaintiff believes and therefore alleges that Defendant Goody Counseling Services, LLC's misappropriation of Plaintiff's information was carried out in a willful, wanton and reckless manner in disregard of Plaintiff's rights.

26. Plaintiff believes and therefore alleges that Goody Counseling Services, LLC has benefited financially from the misappropriation of Plaintiff's confidential, proprietary, trade secret information, thereby causing the Plaintiff losses and damages.

WHEREFORE, Plaintiff demands judgment against the Defendant Goody Counseling Services, LLC in an amount greater than $75,000.00, plus interest and costs; and that this Court issue *Ex Parte*, Interlocutory and Permanent Injunctions requiring the Defendant Goody Counseling Services, LLC to cease and desist from use of Plaintiff's confidential, proprietary, trade secret information, and such other and further relief as is just.

## **COUNT FOUR-Unjust Enrichment**

27. Plaintiff adopts by reference the allegations set forth in paragraphs 1-26 above.

28. Plaintiff is informed and believes and therefore alleges that Defendant Goody Counseling Services, LLC wrongfully received, knowingly accepted and financially benefited from Plaintiff's confidential, proprietary, trade secret information without legal authority to possess and use the same.

29. As a result of the conduct described above, Defendant Goody Counseling Services, LLC has been unjustly enriched at the expense of the Plaintiff.

WHEREFORE, Plaintiff demands judgment against the Defendant Goody Counseling Services, LLC in an amount greater than $75,000.00, plus interest and costs; and such other and further relief as is just.

s/ *Richard Bloch*
Richard Bloch
AIS ID No. 7206010009
Shiling, Bloch & Hirsch, P.A.
600 Baltimore Avenue, Suite 301
Towson, Md. 21204-4022
(410) 332-0100
Richard@SBHPA.com
Attorneys for Plaintiff

## RULE 20-201 CERTIFICATION

Pursuant to Rule 20-201, I hereby certify that this filing does not contain any restricted information.

s/ *Richard Bloch*
Richard Bloch

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 9th day of August 2023, a copy of the foregoing was served via MDEC e-filing, and electronic mail to:

James E. Rubin, Esq.
jrubin@rubinemploymentlaw.com
600 Jefferson Plaza, Suite 204
Rockville, MD 20850

s/ *Richard Bloch*
Richard Bloch

*Exhibit A*

## EMPLOYMENT AGREEMENT

THIS EMPLOYMENT AGREEMENT ("Agreement") is entered into this <u>6th</u> day of <u>October</u>, 2020 and becomes effective as of <u>October 6, 2020</u> ("Effective Date") by and between **The Maryland Anxiety Center**, ("Employer") located at 1122 Kenilworth Drive, Suite 211, Towson, Maryland 21204, and Chelsea Goody, LGPC, a Maryland Licensed Professional Counselor("Employee").

### BACKGROUND

Employer operates a cognitive, behavioral therapy practice, which provides clinical assessment, treatment and intervention services and programs to meet its patients needs. Employee is a Maryland Licensed Professional Counselor who has training, education and experience in providing therapeutic services. Employer desires to offer Employee employment and Employee accepts Employer's offer of employment on the terms and conditions set forth herein.

NOW, THEREFORE, the parties, intending legally to be bound, agree as follows:

1. **EMPLOYMENT.**

1 Provided that Employee meets Employer's credentialing requirements as of the Effective Date, Employer offers Employee employment for the purpose of having Employee perform the duties and responsibilities set forth herein, and Employee accepts this offer of employment, upon the terms and conditions set forth in this Agreement.

   1.1 As of the Effective Date, Employee shall:
   
   1.1.1 Be duly licensed by the Maryland Board of Professional Counselors and Therapists to practice clinical professional counseling without restriction, in Maryland;
   
   1.1.2 Have satisfactorily completed Employer's credentialing process including a personal background and reference check;
   
   1.1.3 If applicable, be a certified provider in the Medicaid and Medicare programs and other third party payor programs that contract with Employer.

2. **TERM.** The initial term of this Agreement shall be three (3) contract years ("Initial Term") commencing as of the Effective Date and ending thirty-six (36) months later, unless sooner terminated in accordance with the provisions herein. Thereafter, Employee's employment with Employer shall automatically renew for successive one-year periods (each a "Renewal Term"), unless terminated earlier in accordance with <u>Section</u> 9. The entire period of the Employee's employment is referred to herein as the "Term." The covenants contained in this Agreement shall apply only during the Term, except for those covenants which specifically provide otherwise. All representations and warranties of Employee shall survive the termination of Employee's employment with Employer.

1

3. DUTIES.

   3.1 General. During the Term, Employee shall practice actively as an employee of Employer and shall devote Employee's best efforts on behalf of Employer. Employee shall not engage in any other clinical practice unless first authorized in writing by Employer. If Employer so approves, Employee's other professional activities shall not interfere with performance of her/his duties for Employer.

   3.2 Specific Duties. Employee shall fully, loyally and faithfully perform all duties reasonably assigned to Employee by Employer. Without limitation thereon, Employee shall at all times:

   3.2.1   Perform only those clinical services within Employee's scope of practice;

   3.2.2   Perform initial and periodic evaluations and assessment of patients.

   3.2.3   Provide on-going treatment services to meet patient's mental health and behavioral health needs;

   3.2.4   Provide all services in accordance with the highest ethical precepts and prevailing standards;

   3.2.5   Complete all charts and record-keeping requirements in timely manner; Employee shall ensure patient records are completed within 72 hours of the patient being seen for treatment.

   3.2.6   Comply with all policies and procedures of Employer and applicable federal and state laws and regulations;

   3.2.7   Attend professional meetings and comply with requirements for supervision and continuing education;

   3.2.8   Perform all other services reasonably requested by Employer.

   3.3 Billing.

   3.3.1   If applicable, Employee shall adhere to the requirements of Medicaid, Medicare and other third-party payors. Employee shall cooperate with and abide by Employer's policies and procedures for ensuring proper coding and documentation.

   3.3.2   Employee hereby assigns to Employer the sole right to bill and receive payment for all services rendered by Employee pursuant to this Agreement.

   3.4 Medical Records. Employee shall prepare and maintain, or cause to be prepared and maintained, all reports, claims, correspondence and records relating to all of Employee's professional services, as required by Employer or applicable laws. Without limitation thereon, Employee shall cooperate with Employer in maintaining accurate, complete, up-to-

2

date medical records for all patients, in accordance with all applicable federal and state laws and regulations and the policies of Employer. All such records shall be the sole property of Employer.

4. **QUALIFICATIONS OF EMPLOYEE.** Employee represents and warrants to Employer that the following statements are true and fully accurate as of the Effective Date of this Agreement and throughout the Term. During the Term, if there is any occurrence that makes any of the statements below not fully accurate, Employee shall promptly notify Employer in writing within three (3) business days of becoming aware of the occurrence.

4.1 To the best of Employee's knowledge, Employee is not now a defendant in any malpractice proceeding and has not been a defendant in a malpractice proceeding. Employee does not know of any pending or threatened malpractice claims against Employee.

4.2 Employee's license to practice professional counseling in the State of Maryland and/or any other state is in good standing and has not been revoked or suspended, subject to reprimand, censor, or otherwise been restricted by any board, organization or governmental body in connection with Employee's professional activities or employment and no limitations have been imposed on Employee's right to practice.

4.3 The execution, delivery and performance of this Agreement is neither prohibited by, nor constitutes a default under, any statute, law, judgment, order, decree, writ, injunction, deed, instrument, contract, lease, license or permit to which Employee is a party or by which Employee is bound.

4.4 To the best of Employee's knowledge, there is no litigation, proceeding or investigation by any governmental agency, institution, or professional organization, including, but not limited to, any bankruptcy or malpractice proceeding, pending or threatened against Employee.

4.5 Employee's employment has not been terminated by any health care provider because of any violation of any standard of care, ethical precept or pertinent law, nor has Employee, in the course of employment with any health care provider, violated, in any material respect, any standard of care, ethical precept or pertinent law.

4.6 Employee has not been terminated from participation in any third party payor program.

5. **COMPENSATION.**

5.1 <u>Amount</u>. For all of the services Employee renders to or on behalf of Employer, Employer shall pay Employee a salary in accordance with <u>Attachment</u> A attached hereto and incorporated by reference herein.

5.2 <u>When Paid</u>. Employee's salary shall be paid in accordance with Employer's customary payroll policy.

3

Case 1:24-bk-00600-HWV    Doc 28    Filed 06/25/24    Entered 06/25/24 14:50:18    Desc
Main Document    Page 12 of 20

5.3 **Withholding.** Employer may withhold from Employee's compensation and any other amounts paid to or for the benefit of Employee, all sums authorized by Employee or required to be withheld by law, court decree, and executive order, and any amounts which Employer believes that Employee owes Employer.

6. **FRINGE BENEFITS.**

6.1 **Professional Liability Insurance.** Employer will provide and maintain professional liability insurance protecting Employee while Employee is rendering services on behalf of Employer. Employer may elect, at its sole and absolute discretion, to maintain that insurance on either an "occurrence" basis or a "claims made" basis and, from time to time, may change the basis upon which it is maintained. If the professional liability insurance is maintained on a "claims made" basis, then, if Employee ceases to be covered under that policy at any time before the statute of limitations has expired with respect to all claims against Employee for matters occurring while Employee was in Employer's employ, or if Employee's employment with Employer is terminated for any reason or no reason, Employee, at Employee's expense, shall immediately obtain an extended reporting endorsement covering Employee and Employer for the period of Employee's employment with Employer (or reimburse Employer if that endorsement already is in place) and shall provide evidence of that endorsement to Employer. If Employee is required to obtain the extended reporting endorsement but does not do so, Employer may obtain that endorsement, and Employee shall promptly reimburse Employer for the cost thereof.

6.2 **Other Benefits.** Employee shall not be entitled to any benefits unless set forth on Attachment A to this Agreement, on the terms and subject to the conditions set forth on that Attachment.

7. **MAIL AND CHECKS.** Checks made payable to Employee but belonging to Employer may be endorsed in Employee's name by an officer of Employer or designee and deposited to Employer's credit. After the Term, mail addressed to Employee involving matters still being handled by Employer may be answered by employees of Employer without notice to Employee.

8. **FEES AND OTHER PAYMENTS.** Employee agrees that all fees and other amounts paid or given to Employee for services rendered by Employee under this Agreement, except for Employee's salary and reimbursement for expenses approved by Employer, shall be immediately turned over to Employer by Employee upon receipt thereof. Employee acknowledges that Employee has no right, title or interest in fees and other amounts paid for services rendered hereunder by Employee and that those amounts belong solely to Employer. Employer in its sole discretion shall determine the fees to be charged for Employee's services hereunder. Employee may set fees with approval from the Employer.

9. **TERMINATION.**

9.1 **By Either Party.** During the Initial Term, Employer may terminate this Agreement without cause by giving Employee sixty (60) days prior written notice. After the expiration of the Initial Term, either party may terminate this Agreement at any time, for any reason or without a

4

Case 1:24-bk-00600-HWV    Doc 28    Filed 06/25/24    Entered 06/25/24 14:50:18    Desc
Main Document    Page 13 of 20

reason, by giving the other party written notice, specifying the date of termination, at least sixty (60) days before the date of termination.

    9.2    <u>Automatic</u>. The employment of Employee by Employer will terminate automatically and immediately upon the occurrence of any of the following events:

        9.2.1    Employee's death;

        9.2.2    The suspension, revocation or cancellation of Employee's right to practice as an LPC in the State of Maryland or any other state;

        9.2.3    If applicable, the suspension or exclusion of Employee from participation in Medicare, Medicaid, or other third-party payor program; or

        9.2.4    The imposition of any restriction or limitation by any governmental authority having jurisdiction over Employee which prevents Employee from carrying out her/his duties hereunder.

    9.3    <u>Termination by Employer</u>. Employer, at its option, may immediately terminate Employee's employment if any of the following events occur:

        9.3.1    Employee fails or refuses (unless the failure or refusal is due to Employee's disability or illness) to faithfully and diligently perform Employee's usual and customary duties to Employer or to adhere to the provisions of this Agreement;

        9.3.2    Employee fails or refuses to comply with reasonable policies and standards established by Employer;

        9.3.3    Employee is found guilty of unprofessional, unethical, immoral, or fraudulent conduct by any board, institution or organization, or professional society having any privilege or right to pass upon the conduct of Employee, or if Employee resigns from any professional organization, institution or society under threat of disciplinary action for that conduct;

        9.3.4    Employee becomes uninsurable for professional liability insurance at standard rates;

        9.3.5    Employee willfully or intentionally injures Employer or its assets;

        9.3.6    Employee is charged with a felony;

        9.3.7    Employee breaches any covenant contained in this Agreement;

        9.3.8    Employee is dishonest or disloyal to the detriment of Employer;

        9.3.9    Employee provides or attempts to provide services while under the influence of alcohol, drugs, or other mood altering substances (other than a medication duly prescribed by her/his treating physician and taken in accordance with that prescription); or

9.3.10 Employee is convicted of a misdemeanor, other than a traffic violation, which, in the reasonable judgment of Employer, reflects adversely on the reputation of Employer.

9.4 **Termination by Practice for Other Reasons.** Employer, at its option, upon ten (10) days' prior written notice, may terminate Employee's employment if any of the following occur:

9.4.1 Employee is disabled or unable to substantially perform the duties hereunder for thirty (30) days in any sixty (60) day period, subject, however, to any limitations imposed by law; or

9.4.2 Employer becomes insolvent.

9.5 **Termination Pay.** Upon termination, Employee shall only receive the salary due for her/his services rendered up to the date of termination. Employer may offset, against any amount it owes Employee, any amount that Employer believes that Employee owes Employer.

9.6 **Suspension.** Employer, at its option and discretion, may at any time suspend Employee's employment with pay pending any termination hereunder or may terminate Employee's employment immediately upon notice to Employee and pay Employee any amounts which otherwise would have been payable to Employee during the period required hereunder for Employer to provide prior written notice to Employee.

9.7 **Cause.** As used in this Agreement, the term "Cause," whether or not capitalized, means any termination under Section 9.2.2, 9.2.3, 9.2.4, or any provision of Section 9.3.

10. **CONFIDENTIALITY OBLIGATIONS.** The term "Confidential Information," as used in this Agreement, includes, without limitation, (i) all patient information, including all records, patient lists, names of patient contacts, any "protected health information," within the meaning of the Health Insurance Portability and Accountability Act, as amended; and other information relating to patients; (ii) Employer's referral sources; (iii) all policy and procedure manuals, and programs, together with all documents and other tangible material embodying or illustrating any of the foregoing; (iv) all information concerning Employer's billing practices and procedures; (v) the rates and amounts that Employer pays to its personnel, including, without limitation, Employee, other employees and independent contractors; (vi) all formulae, patterns, compilations, programs, plans, ideas, concepts, object codes, source codes, devices, lists, data bases, checklists, methods, techniques, procedures, and processes of Employer; (vii) all financial information concerning Employer; and (viii) any other information relating to Employer which is disclosed by Employer to Employee or Employee learns in the course of Employee's employment. During and after the period of Employee's employment with Employer, Employee shall maintain the secrecy and confidentiality of the Confidential Information and shall not (i) use, disclose, furnish or make accessible Confidential Information to anyone or in any way use Confidential Information, for Employee's own benefit or for the benefit of any other individual, firm or entity; or (ii) take or permit any action to be taken which would reduce the value of the Confidential Information to Employer. Notwithstanding anything herein to the contrary, the obligations of secrecy and confidentiality set forth herein shall not apply to any information which is now generally publicly

6

known, or which subsequently becomes generally publicly known other than as a direct or indirect result of the breach of this Agreement by Employee.

All books, documents, lists, and records including patient records pertaining to Employer's practice (collectively, "Records"), whether the Records are written, typed, graphic, printed, contained on microfilm, contained on computer disc, stored electronically, contained on tape, or are set forth in some other medium of expression and all Confidential Information which would qualify as a trade secret ("Trade Secret") are the sole and exclusive property of Employer. Employee shall not misappropriate or suffer the misappropriation of any Trade Secrets or Records. Employee shall not copy or remove any Records from Employer's premises without the prior written consent of an authorized officer of Employer. Upon the termination of Employee's employment with Employer or upon sooner demand by Employer, Employee shall promptly return to Employer all Records and copies thereof and any other property of Employer, which have come into Employee's possession and have not been returned to Employer.

11. **PRACTICE PROTECTION COVENANTS.**

    11.1 **No Solicitation of Patients.** Employee, for twenty-four (24) months after Employee ceases to be employed by Employer, shall not directly or indirectly, for Employee, or for any other person, firm, corporation, partnership, or other entity, whether as principal, agent, stockholder, partner, joint venture, officer, employee, member, director, sole proprietor, or otherwise, solicit any individual ("Existing Patient") to whom Employee or Employer provided professional services during the twenty-four (24) months preceding the Termination Date or any shorter period that Employee has been employed by Employer (the "Pre-Termination Period"), to use the professional services of Employee or any person or entity with whom or with which Employee is affiliated.

    11.2 **No Solicitation of Employees.** Employee, for twenty-four (24) months after Employee ceases to be employed by Employer, shall not directly or indirectly, for Employee, or for any other person, firm, corporation, partnership, or other entity, whether as principal, agent, stockholder, partner, joint venture, officer, employee, member, director, sole proprietor, or otherwise, solicit any individual who was employed by Employer or who, as an independent contractor, worked primarily for Employer at any time during the Pre-Termination Period, for the purpose of hiring or engaging to perform any services which are the same or similar to the services that the person performed for Employer.

    11.3 **No Hire of Employees.** Employee, for twenty-four (24) months after Employee ceases to be employed by Employer, shall not directly or indirectly, for Employee, or for any other person, firm, corporation, partnership, or other entity, whether as principal, agent, stockholder, partner, joint venture, officer, employee, member, director, sole proprietor, or otherwise, hire or engage any other employee of Employer to perform any services which are the same or similar to the services that the person performed for Employer.

7

11.4 No Disturbance. Employee, for twenty-four (24) months after Employee ceases to be employed by Employer, shall not directly or indirectly, take any other action whatsoever which may disturb Employer's relations with any of its patients, employees or Referral Sources.

11.5 Modification. Employee hereby acknowledges that the covenants contained in Sections 11.1 through 11.6 are necessary in order to protect the goodwill of Employer and are reasonable. However, if any court determines that any of those covenants are unenforceable in accordance with its terms regarding duration, geographical limit, or scope of prohibited activity, then the covenant shall not terminate. Instead, with respect to its operation in the jurisdiction of the court which makes the adjudication, the covenant shall be deemed to have been amended to the extent required to render it valid and enforceable. The adjudication shall not be deemed to affect the validity or enforceability of the covenant in any jurisdiction other than the one in which the adjudication is made.

11.6 Extension. If Employee violates the restriction set forth in Section 11, Employer shall not be deprived of the full benefit of the period of the covenant. Accordingly, the duration of that covenant shall be extended by the period of any violation of that covenant.

12. INJUNCTIVE RELIEF. Employer shall be entitled to injunctive or other equitable relief because it will be caused irreparable injury and damage by a breach of the provisions of Section 10, entitled "Confidentiality Obligations," or Section 11, entitled "Practice Protection Covenants." The right to injunctive relief shall include the right to both preliminary and permanent injunctions. Employer's right to injunctive relief shall not preclude any other rights or remedies that Employer may have, all of which rights and remedies are cumulative. Employer shall not be required to post a bond or other similar form of assurance if it brings an action for an injunction or other equitable relief in connection with Section 10 or 11 hereof.

13. REPAYMENT OF EXPENSES.

13.1 Reimbursement of Expenses. Upon termination of Employee's employment with Employer for any reason, Employee shall reimburse Employer for any unearned prepaid expenses, including, without limitation, all items paid in advance by Employer to or on behalf of Employee, such as, by way of example, malpractice, health, and life insurance premiums, (each an "Unearned Prepaid Expense"). Employee shall not be required to reimburse Employer, however, for an Unearned Prepaid Expense if the amount thereof is refunded to Employer. An Unearned Prepaid Expense shall be that portion of the expense determined by multiplying the payment for the expense by a fraction, the numerator of which shall be the number of days remaining in the period for which the payment has been made and the denominator of which shall be the total number of days in that period.

13.2 Disallowed Expenses. If Employer pays or reimburses Employee for any expense incurred by Employee in connection with the services rendered by Employee for Employer, and if the Internal Revenue Service disallows any of those expenses as a deduction by Employer, then Employee, if requested to do so by Employer, shall reimburse Employer for the amount of Employer's state and federal income tax thereon.

8

14. **NOTICES.** Any notice, demand, consent, approval, request or other communication ("Notice") required or permitted under this Agreement must be in writing. If a Notice is given in writing, it must be either personally delivered, delivered by overnight delivery service or sent by certified or registered mail, postage prepaid, return receipt requested. Notices hand delivered to the parties will be deemed effective if personally delivered to them. Notices given by overnight delivery service or by certified or registered mail shall be deemed properly addressed if addressed to Employer at its address first set forth above, and to Employee at Employee's home address last known to Employer. A Notice delivered by overnight delivery service will be deemed effective on the day after it is deposited with a nationally recognized overnight delivery service. A Notice sent by certified or registered mail will be deemed effective forty-eight (48) hours after it is deposited in the mail. Either party may designate, by Notice to the other, substitute addressees or addresses for Notices; and thereafter, Notices must be directed to those substitute addressees or addresses.

15. **MISCELLANEOUS.**

    15.1 **Governing Law.** The laws of the State of Maryland applicable to contracts made to be performed in the State of Maryland will govern the validity and construction of this Agreement.

    15.2 **Jurisdiction.** The parties submit to the jurisdiction and venue of the courts of the State of Maryland.

    15.3 **Word Forms.** Whenever used herein, the singular includes the plural and the plural includes the singular. The use of any gender, tense or conjugation includes all genders, tenses and conjugations.

    15.4 **Headings.** The Section headings have been included for convenience only, are not part of this Agreement, and are not to be taken as an interpretation of any provision thereof.

    15.5 **Amendments.** This Agreement may be amended, waived, changed, modified or discharged only by a writing signed by both parties. Any consent to be given by Employer hereunder may be given, withheld, conditioned or delayed at Employer's sole and absolute discretion.

    15.6 **Successors.** This Agreement is to be binding upon and inure to the benefit of the parties, their successors, assigns, heirs, personal representatives and other legal representatives. Employer may assign this Agreement to any person or entity which acquires all or substantially all of Employer's assets. However, Employee must personally perform and may not assign Employee's obligations and duties hereunder.

    15.7 **Entire Agreement.** This Agreement constitutes the entire agreement between the parties and supersedes any prior agreements, oral or written, including Employer's offer letter. Any Attachments are a part of this Agreement.

    15.8 **Remedies Cumulative.** The remedies set forth herein are cumulative and are in addition to any and all other remedies allowed by law or in equity.

15.9 _Waiver._ The waiver by any party of a breach of any provision of this Agreement shall not operate or be construed as a waiver of any subsequent breach by any party.

15.10 _Background._ The Background is a part of this Agreement.

15.11 _NO RIGHT TO JURY TRIAL._ NEITHER PARTY SHALL ELECT, AND EACH PARTY HEREBY WAIVES ITS RIGHT TO, A TRIAL BY JURY IN CONNECTION WITH THIS AGREEMENT OR ANY ACT, CLAIM, COUNTERCLAIM, MATTER OR THING ARISING HEREUNDER OR IN CONNECTION WITH THE EMPLOYEE'S EMPLOYMENT WITH EMPLOYER.

IN WITNESS WHEREOF, the parties have executed this Agreement on the day and year first above written.

WITNESS/ATTEST:

The Maryland Anxiety Center

By: _[signature]_
Andrea G. Batton, LCPC
Clinical Director

_____

EMPLOYEE

_[signature]_, LCPC
Chelsea Goody, LGPC
Clinical Associate

_____

10

## ATTACHMENT A TO EMPLOYMENT AGREEMENT

**Salary** – Employee's annual salary will be 40% of collection actually received by the Employer from the services of the Employee (net of refunds, chargebacks and the like), less applicable taxes and other deductions.

**Benefits** – Discounted group health insurance at full-time status. Full-time status is a minimum caseload of 20 face-to-face patients per week.